UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRINE WASHINGTON, individually and as a representative of the classes,<br><br>Plaintiff,<br><br>-against-<br><br>STERLING INFOSYSTEMS, INC.<br><br>Defendant. | Case No.: 1:18-cv-4320<br><br><br><br>**CLASS ACTION COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Adrine Washington ("Plaintiff"), on behalf of herself, the Classes set forth below brings this Class Action Complaint against Sterling Infosystems, Inc. ("Defendant").

## PRELIMINARY STATEMENT

1. This is a case about holding Defendant accountable for its willful failure to follow federal laws governing the content of consumer reports. Despite having been sued in a multiple class actions for essentially the same conduct alleged herein, and despite settling one case for both monetary and injunctive relief, Defendant has persisted in breaking the law and its promises to consumers.

2. Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681, *et seq.*

3. As further discussed herein, Defendant has willfully violated the FCRA by systematically reporting adverse information on consumers which antedates the report by more than seven years, despite 15 U.S.C. § 1681c(a) explicitly prohibiting the inclusion of such information.

4. Specifically, Defendant reports non-criminal offense information older than seven years. In 2016 and 2017 on three separate occasions, Defendant reported Plaintiff's non-criminal "infraction" from 2001 related to her car registration even though this infraction from Indiana is not a criminal offense under Indiana law.

5. Defendant further violates the FCRA by reporting these non-criminal events as "Criminal Records" even though the offenses are not criminal. This false reporting exaggerates the severity of a consumer's offense history.

6. By reporting these obsolete, non-criminal offenses, Defendant has taken away the protection the FCRA affords consumers against being judged based on old, and frequently inaccurate, information.

7. Defendant's actions are all the more egregious because Defendant *knows* that including old, adverse, and inaccurate information in its reports violates the law. Defendant was sued in a separate class action lawsuit in 2012 for reporting outdated adverse information, and the final settlement in that case resulted in Defendant paying over $4 million to resolve those claims against it. *Ernst v. DISH Network, LLC*, No. 12-cv-8794 (S.D.N.Y. Nov. 13, 2015).

8. Yet, rather than producing accurate reports which only contain lawfully reportable information, Defendant continues to prefer to produce cheap, inaccurate and outdated reports which create the false appearance of being comprehensive and insightful.

9. Through this pattern and practice of related violations, Defendant has consistently undermined Congress's carefully struck balance, unlawfully placing its business interests above the rights of consumers.

2

10. Based on Defendant's conduct, Plaintiff asserts FCRA claims on behalf of herself and two Classes of consumers. On behalf of herself and the Classes, Plaintiff seeks damages, punitive damages, attorneys' fees, expenses, costs, and all available other appropriate relief.

## THE PARTIES

11. Individual and representative Plaintiff Adrine Washington is a resident of Indianapolis, Indiana.

12. Defendant Sterling Infosystems, Inc. is a corporation doing business throughout the United States, including in Manhattan, New York. Defendant is headquartered in New York, New York.

13. According to its website, Defendant has 20 offices in nine countries, and "serves over 50,000 customers around the world, including a quarter of the Fortune 100." *See* https://www.sterlingtalentsolutions.com/about/about-us/ (site last visited February 19, 2018).

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATUTORY BACKGROUND

16. The FCRA was enacted based on Congress's findings that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681. Thus, the FCRA requires consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.*

17. To ensure that consumer reporting agencies report information in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information," the FCRA prohibits consumer reporting agencies from reporting old information. Specifically, agencies are forbidden from reporting the following:

> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c(a).

18. The FCRA also requires that consumer reporting agencies maintain reasonable procedures to ensure "maximum possible accuracy" of the information included in the reports they produce. *See* 15 U.S.C. § 1681e(b).

19. Defendant systematically and purposefully disregards its "grave responsibilities" by routinely reporting outdated, adverse, and inaccurate on consumers in violation of the FCRA.

**ALLEGATIONS RELATING TO NAMED PLAINTIFF WASHINGTON**

20.     In 2001, Plaintiff admitted to having a false or fictitious vehicle registration in Wayne County, Indiana. She was fined $76.50.

21.     Under Indiana law, having a false or fictitious registration is classified as an "infraction." Since 1981, all infractions, including traffic offenses, and violations of municipal ordinances in Indiana, are considered non-criminal offenses and are treated as civil matters. *Cunningham v. State*, 835 N.E.2d 1075, 1076–77 (Ind. Ct. App. 2005).

22.     On or around November 8, 2016, Defendant furnished a background report on Plaintiff to Plaintiff's prospective employer, PLS Financial Services, Inc. A redacted copy of the report is attached hereto as Exhibit 1. Had Plaintiff obtained the position for which she applied with PLS Financial Services, Inc. she would have received a salary of less than $75,000. PLS Financial Services, Inc. procured Plaintiff's report in the routine course of business, in connection with her application for employment. PLS Financial Services, Inc. did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

23.     On or around October 24, 2017, Defendant furnished a background report on Plaintiff to Plaintiff's prospective employer, Integrity Staffing Solutions. A redacted copy of the report is attached hereto as Exhibit 2. Had Plaintiff obtained the position for which she applied with Integrity Staffing Solutions, she would have received a salary of less than $75,000. Integrity Staffing Solutions procured Plaintiff's report in the routine course of business, in connection with her application for employment. Integrity Staffing Solutions did not procure

Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

24. On or around November 1, 2017, Defendant furnished a background report on Plaintiff to Plaintiff's prospective employer, Davidson Hotels and Resorts. A redacted copy of the report is attached hereto as Exhibit 3. Had Plaintiff obtained the position for which she applied with Davidson Hotels and Resorts, she would have received a salary of less than $75,000. Davidson Hotels and Resorts procured Plaintiff's report in the routine course of business, in connection with her application for employment. Davidson Hotels and Resorts did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

25. On each of the reports set forth in Exhibits 1-3, Defendant reported Plaintiff's 2001 infraction under the heading "County Criminal Record." The reports identify the offense as having a "Case Level" of "Infraction" and "Type" as "Infraction."

26. Accordingly, Defendant's reports on Plaintiff unlawfully report a non-criminal infraction that antedates the reports by more than seven years. The inclusion of this information in Plaintiff's reports violates the plain language of 15 U.S.C. § 1681c.

27. Defendant's reports are also inaccurate. The non-criminal infraction was falsely reported under the heading "County Criminal Record" despite the fact that the infractions were not criminal.

28. Defendant's inaccurate and obsolete reporting invaded Plaintiff's privacy rights in not having obsolete, old, and irrelevant information reported on her, and presented her to her prospective employers as having a more serious offense record than she had in reality.

## **DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29. Defendant is a consumer reporting agency because it "for monetary fees… regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

30. Defendant investigates and reviews public record databases and maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

31. From its files, Defendant sells consumer reports to potential employers wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants.

32. Defendant claims it is "committed to compliance" including with respect to the Fair Credit Reporting Act" and boasts that its "commitment to legal compliance is reflected in our accreditation by the National Association of Professional Background Screeners (NAPBS)" which Defendant describes as the "gold standard." https://www.sterlingtalentsolutions.com/about/about-us/ (last visited Feb. 19, 2018).

33. When a consumer reporting agency furnishes a consumer report to the consumer or a third party, the agency is required to exclude adverse items of information which antedate the consumer report by more than seven years. 15 U.S.C. § 1681c(a)(5).

34. This prohibition includes the reporting of non-conviction information that antedates the report by more than seven years, including any charge which did not ultimately

7

result in a criminal conviction. *See* 15 U.S.C. §§ 1681c(a)(2), (a)(5); *see also Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3-*4 (N.D. Ill. July 17, 2014) (holding that the "express language of the FCRA" mandates that "a consumer reporting agency may not include any adverse item of information other than a 'record of conviction' not a 'record of dismissed charges'"); *Haley v. Talentwise, Inc.*, 9 F. Supp. 3d 1188, 1192-95 (W.D. Wash. 2014) (finding that under the "plain language" of the FCRA, a "dismissed charge from over seven years ago is both a 'record of arrest' and 'adverse' information that [a consumer reporting agency] is prohibited from including in [a] consumer report") (citing *Serrano v. Sterling Testing Syst.*, 557 F. Supp. 2d 688, 693 (E.D. Penn. 2008)); *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1394 (N.D. Cal. 2014) ("In light of the remedial purpose of the Act, this order now holds that only the actual convictions may be reported and stale dismissed counts must be combed out and go unreported."); *Dowell v. Gen. Info. Servs, Inc.*, 13-CV-02581-L-BGS, Memorandum of the United States of America in Support of the Constitutionality of § 1681c of the Fair Credit Reporting Act, at 17 (S.D. Cal. Feb. 20, 2014) (stating that dismissed charges, even if associated with a conviction, may not be reported under the FCRA).

35. Notwithstanding this clear statutory directive, Defendant routinely reports outdated, adverse non-criminal information that antedates the report by more than seven years.

36. Defendant is well aware of the FCRA's prohibition on reporting obsolete information. Defendant has adopted such a practice despite knowing that its practices do not comply with the FCRA.

37. Defendant has been sued multiple times for reporting outdated non-conviction information in violation of the FCRA, and settled a class action lawsuit involving claims of reporting outdated non-conviction information for $4.75 million. *See Ernst v. Sterling*

*Infrosystems, Inc.*, Case No. 12-cv-8749, ECF 139-1 (S.D.N.Y. Jan. 9, 2015) ("*Ernst* Settlement Agreement"); *see also Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 514 (S.D.N.Y. 2017) (denying motion to dismiss claim that Sterling reported adverse, outdated address information).

38. As part of the *Ernst* settlement agreement, Defendant agreed to stop reporting "any charge, accident or civil citation in the motor vehicle section of a consumer report, which did not result in a criminal conviction, and which occurred more than seven years prior to the date of the report." *Ernst* Settlement Agreement ¶ 9.1. Defendant also agreed to "not report any criminal count charged in criminal case in which a conviction occurred more than seven years prior to the date of the report unless that charge itself resulted in a conviction." *Id.* ¶ 9.2.

39. Despite promising to make practice changes to better comply with § 1681c(a), Defendant still is not complying with the FCRA's prohibition on reporting outdated, non-conviction information.

40. Defendant's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance. *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano*, 557 F. Supp. 2d 688 (holding FCRA prohibits even alluding to existence of unreportable adverse information).

41. It is standard practice for consumer reporting agencies to write algorithms "to filter out obsolete credit information." *See* http://www.consumeradvocates.org/issues/credit-reporting-problems (last accessed Feb. 16, 2016).

42. As one of the largest consumer reporting agencies in the world, Defendant is aware of the power of algorithms, and their usefulness in structuring consumer reports. Defendant, consistent with standard industry practices, easily could have written an algorithm to ensure that all of its reports would exclude non-criminal offense information older than seven years.

43. Defendant failed to use an appropriate algorithm to exclude non-convictions, such as the "infraction" at issue here, in spite of the fact that it easily could have done so and that these types of algorithms are standard in the credit reporting industry.

44. It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). By failing to utilize a purge date for outdated information, Defendant's practices and procedures fall far below industry standards and constitute recklessness.

45. Defendant further is well aware of the FCRA's paramount accuracy requirements. Defendant has adopted such practices despite knowing that its practices do not comply with the FCRA.

46. Defendant easily could have reported non-criminal offense information under a heading that did not state that the reported record was a "Criminal Record."

47. Further, Defendant could have employed human beings trained in the FCRA to review information in its possession to ensure the accuracy of its reports and to ensure that its reports were not reporting outdated information.

48. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and obsolete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

## CLASS ACTION ALLEGATIONS

49. Plaintiff asserts a claim for violations of 15 U.S.C. § 1681c(a) against Defendant on behalf of herself and the **Obsolete Information Class** defined as follows:

    i. All individuals on whom Defendant prepared a background check on or after two years preceding the filing of this Complaint and continuing through the date the class list is prepared;
    ii. Whose background check contains information relating to an incident in a "County Criminal Record" or other non-motor vehicle record section of the report;
    iii. Where the incident is a non-criminal offense; and
    iv. Where the disposition date antedates the date of the report by more than seven years.

50. Plaintiff asserts a claim for violations of 15 U.S.C. § 1681e(b) against Defendant on behalf of herself and the **Non-Criminal Information Class** defined as follows:

    i. All individuals on whom Defendant prepared a background check on or after two years preceding the filing of this Complaint and continuing through the date the class list is prepared; and
    ii. Whose background check contains information relating to a non-criminal offense in the "County Criminal Record" section of the report.

51. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3).

52. <u>Numerosity</u>: The Classes are sufficiently numerous. Defendant issues millions of consumer reports each year, thousands of which inaccurately describe whether a job applicant or

contain obsolete information or non-criminal information in the "County Criminal Record" section of Defendant's reports.

53. <u>Commonality</u>: This case presents common questions of law and fact, including but not limited to:

    a) Whether Defendant violated the FCRA by reporting obsolete non-criminal information in its reports;

    b) Whether Defendant violated the FCRA by reporting non-criminal information in the "County Criminal Record" section of its reports;

    c) Whether Defendant's violations of the FCRA were willful; and

    d) The proper measure of damages.

54. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

55. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and have retained counsel experienced in complex class action litigation. Plaintiff has no interests that conflict with those of any class members.

56. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate

actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **15 U.S.C. § 1681c(a)**
### *On behalf of the Plaintiff and the Obsolete Information Class*

57. In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Class to third parties.

58. The consumer reports provided by Defendant included adverse information other than criminal conviction information antedating the reports by more than seven years.

59. The foregoing violations were negligent and/or willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Obsolete Information Class members under 15 U.S.C. § 1681c(a). In addition to the allegations set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

a) The FCRA was enacted in 1970; Defendant has had years to become compliant;

b) Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c) Defendant was previously sued for similar conduct, paid monetary damages, and promised to change its practices to comply with 15 U.S.C. § 1681c(a);

d) Defendant could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that non-criminal information was excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports;

e) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute; and

f) Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting adverse information other than criminal convictions that antedated the report by more than seven years. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

60. Plaintiff and the Obsolete Information Class are entitled to are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

61. Plaintiff and the Obsolete Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

62. Plaintiff and the Obsolete Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT II**
**15 U.S.C. § 1681e(b)**
*On behalf of the Plaintiff and the Non-Criminal Information Class*

63. In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Class to third parties.

64. The consumer reports provided by Defendant included non-criminal information in the "Criminal History" section of its report.

65. The foregoing violations were negligent and/or willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and Non-Criminal Information Class members under 15 U.S.C. § 1681e(b). In addition to the allegations set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

a) The FCRA was enacted in 1970; Defendant has had years to become compliant;

b) Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c) Defendant could have easily cross-referenced court records to ensure that non-criminal violations were not included in the "County Criminal Record" section of its reports;

d) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute; and

e) Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting non-criminal information in the "Criminal History" section of its reports. By adopting such a policy, Defendant

voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

66. Plaintiff and the Non-Criminal Information Class are entitled actual damages or to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

67. Plaintiff and the Non-Criminal Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

68. Plaintiff and the Non-Criminal Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

a) Determining that this action may proceed as a class action;

b) Designating Plaintiff as representative for the Classes and designating Plaintiff's Counsel as counsel for the Classes;

c) Issuing proper notice to the Classes at Defendant's expense;

d) Declaring that Defendant committed multiple, separate violations of the FCRA;

e) Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and Defendant's obligations under the FCRA;

f) Awarding actual, statutory, and punitive damages as provided by the FCRA;

g) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h) Granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## **DEMAND FOR JURY TRIAL**

69. Plaintiff and the Classes demand a trial by jury.

Dated: May 15, 2018                          BERGER & MONTAGUE, P.C.

/s/ E. Michelle Drake
E. Michelle Drake, MN Bar No. 387366*
John G. Albanese, MN Bar No. 395882*
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

**pro hac vice* forthcoming

Attorneys for Plaintiffs and the Putative Classes