**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADRINE WASHINGTON, individually and as a representative of the classes,<br><br>                    Plaintiff,<br><br>        - against -<br><br>STERLING INFOSYSTEMS, INC.,<br><br>                    Defendant. | Case No. 1:18-cv-4320-GBD<br><br>**DEFENDANT STERLING INFOSYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)** |

Michael O'Neil (*pro hac vice*)
Albert E. Hartmann (*pro hac vice*)
Bruce R. Van Baren (*pro hac vice*)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
T:  312-207-1000
F:  312-207-6400
michael.oneil@reedsmith.com
ahartmann@reedsmith.com
bvanbaren@reedsmith.com

-and-

Zalika T. Pierre
REED SMITH LLP
599 Lexington Ave.
New York, NY
T:  212-521-5400
F:  212-521-5450
zpierre@reedsmith.com

*Counsel for Defendant*
*Sterling Infosystems, Inc.*

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND ..................................................................................... 2

    A.   Plaintiff Pled Guilty to a False and Fictitious Vehicle
        Registration Infraction in 2001. ............................................... 2

    B.   Plaintiff Applied for Three Jobs in 2016 and 2017, and
        Sterling Issued Each Potential Employer a Background
        Check. ........................................................................................ 3

    C.   Plaintiff Asserts Claims Against Sterling Under Sections
        1681c(a)(5) and 1681e(b) of the FCRA. .................................... 4

III.   LEGAL STANDARDS ........................................................................... 5

    A.   The Supreme Court in *Spokeo* Held That a Mere Violation
        of the FCRA That Does Not Result in a Concrete Harm
        Does Not Establish a Plaintiff's Article III Standing to
        Assert FCRA Claims. ............................................................... 5

    B.   The Second Circuit Established a Two-Part Test for
        Determining Whether an Alleged Intangible Injury Is
        Sufficiently "Concrete" To Establish Article III Standing. .................... 8

    C.   To Survive A Rule 12(b)(1) Motion To Dismiss, Plaintiff
        Must Plausibly Allege Facts Demonstrating That She
        Suffered A Concrete Injury-In-Fact. ....................................... 9

IV.    ARGUMENT ....................................................................................... 10

    A.   Plaintiff's Alleged Intangible Harms Are Not Sufficiently
        Concrete to Establish Standing Because They Are Not the
        Harms Congress Sought to Protect By Enacting Sections
        1681c(a)(5) and 1681e(b) of the FCRA. .................................. 10

        1.   Congress enacted Section 1681c(a) to prevent the
            denial of jobs and credit based on outdated
            information. ................................................................... 13

        2.   Congress similarly enacted Section 1681e(b) to
            prevent the denial of jobs and credit based on
            inaccurate information. ................................................ 15

B.     Plaintiff Does Not Allege That She Was Denied A Job Due To Sterling's Allegedly Illegal Reporting – The Harm Congress Sought to Prevent In Enacting Sections 1681c(a) and 1681e(b). ............................................................... 16

C.     Plaintiff Alleges Only Bare Statutory Violations Without Any Resulting "Real-World Harm." ..................................... 20

V.    CONCLUSION ................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1951 (2009) ............................................................ 10, 20

*Amidax Trading Group v. S.W.I.F.T. SCRL,*
671 F.3d 140 (2d Cir. 2011)......................................................... 9, 10, 19-20

*Baur v. Veneman,*
352 F.3d 625 (2d Cir. 2003)............................................................... 9

*Bellino v. JPMorgan Chase Bank, N.A.,*
209 F. Supp. 3d 601,606-12 (S.D.N.Y. 2016) ................................. 12, 21

*Braitberg v. Charter Commc'ns, Inc.,*
836 F.3d 925 (8th Cir. Sept. 8, 2016) ............................................... 6

*Carter v. HealthPort Techs., LLC,*
822 F.3d 47 (2d Cir. 2016)................................................................. 9

*Clapper v. Amnesty Int'l USA,*
133 S. Ct. 1138 (2013) .................................................................... 5, 18

*Crupar-Weinmann v. Paris Baguette Am., Inc.,*
861 F.3d 76 (2d Cir. 2017)...................................................... 12, 17, 19

*Crupar-Weinmann v. Paris Baguette Am., Inc.,*
Nos. 14-3709-cv, 15-464-cv, 2016 WL 3553448 (2d Cir. June 30,
2016).................................................................................................... 6

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006)............................................................... 9

*Dreher v. Experian Info. Solutions, Inc.,*
856 F.3d 337 (4th Cir. 2017) ..................................................... 9, 16, 21

*Gambles v. Sterling Infosystems, Inc.,*
234 F. Supp. 3d 510 (S.D.N.Y. 2017) ........................................... 18-19

*Hagy v. Demers & Adams,*
882 F.3d 616 (6th Cir. 2018) ............................................................. 7

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,*
559 U.S. 573 (2010) ........................................................................ 12

*Jones v. Sterling Infosystems, Inc.*,
　　317 F.R.D. 404 (S.D.N.Y. 2016) ...................................................... 11, 12

*Katz v. Donna Karan Co.*,
　　872 F.3d 114 (2d Cir. 2017)...................................................... 8, 11, 19

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992) .......................................................................... 6

*Meyers v. Nicolet Rest. of De Pere, LLC*,
　　843 F.3d 724 (7th Cir. 2016) ............................................................ 21

*Robins v. Spokeo, Inc.*,
　　867 F.3d 1108 (9th Cir. 2017) ...................................................... 9, 20-21

*Spokeo, Inc. v. Robins*,
　　136 S. Ct. 1540 (2016) .............................................................*passim*

*Strubel v. Comenity Bank*,
　　842 F.3d 181 (2d Cir. 2016).......................................................*passim*

*Villaneueva v. Wells Fargo Bank, N.A.*,
　　No. 13-CV-5429 (CS), No. 14-CV-648 (CS) (LMS), 2016 WL 5220065
　　(S.D.N.Y. Sept. 14, 2016)................................................................ 18

*Warth v. Seldin*,
　　422 U.S. 490 (1975) ........................................................................ 10

*Witt v. Corelogic Saferent, LLC*,
　　No. 3:15-CV-386, 2016 WL 4424955 (E.D. Va. Aug. 18, 2016) ............................ 11

**Statutes**

15 U.S.C. § 1681a(f) .......................................................................... 1

15 U.S.C. § 1681b(b)(2) .................................................................. 14, 19

15 U.S.C. § 1681c(a)...............................................................*passim*

15 U.S.C. § 1681c(b) ........................................................................ 15

15 U.S.C. § 1681c(g) .................................................................. 12, 17

15 U.S.C. § 1681e(b)...............................................................*passim*

15 U.S.C. § 1681k................................................................... 11-12

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ..........................................*passim*

Truth in Lending Act, 15 U.S.C. 1601, *et seq.* ........................................................ 17

**Other Authorities**

115 Cong. Rec., S. 1163-69 (daily ed. Jan. 31, 1969) ..........................................*passim*

116 Cong. Rec., H. 10048-57 (daily ed. Oct. 13, 1970),............................................... 16

144 Cong. Rec., H. 10218-02 (daily ed. Oct. 8, 1998)............................................... 14

Fed. Rule. Civ. P. 11 ............................................................................................... 18

Fed. Rule Civ. P. 12(b)(1).................................................................................. *passim*

Fed. Rule Civ. P. 12(b)(6)........................................................................................ 10

Restatement (Second) of Torts ........................................................................... 20

S. Rep. No. 91-517, 91st Cong., 1st Sess. (Nov. 5, 1969) ........................................... 15

U.S. Const. art. III, § 2 ...................................................................................*passim*

## I.    INTRODUCTION

Plaintiff's Complaint[1] should be dismissed because she lacks Article III standing to prosecute her claims in this Court.  Plaintiff sues Sterling for allegedly reporting obsolete and inaccurate information about her to three prospective employers, in purported violation of Sections 1681c(a)(5) and 1681e(b) of the FCRA. These claims are premised on Sterling's reporting of an Indiana traffic infraction to which Plaintiff admits she pled guilty in 2001.  She contends that accurately reporting that infraction violated the FCRA because it was a non-criminal offense under Indiana law that occurred more than seven (7) years ago and, therefore, was too old to be reported.  Although not challenging the details reported, Plaintiff also alleges that the reporting was made inaccurate when it was listed under the heading "County Criminal Record."

Plaintiff does not allege that she was denied a job due to Sterling's reporting of this infraction on three (3) separate occasions.  Instead, Plaintiff's only allegations of harm are that Sterling's allegedly illegal reporting of this infraction "invaded [her] privacy rights" and made her appear to have "a more serious offense record" than she really did.  (Compl., ¶ 28.)  Plaintiff offers no facts to support these contentions.  Indeed, she fails to advise whether she was offered any of the three (3) jobs.  Moreover, to avoid addressing whether any job loss was attributable to something other than the challenged portions of the reports, Plaintiff redacted an

---

[1] Sterling refers to Plaintiff Adrine Washington as "Plaintiff"; Defendant Sterling Infosystems, Inc. as "Sterling"; Plaintiff's Class Action Complaint (ECF 1) as "Complaint"; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* as the "FCRA"; and "Consumer Reporting Agencies," as defined in 15 U.S.C. § 1681a(f), as "CRAs."

apparent additional criminal record included in the Sterling background reports appended to the Complaint.  (*See* Compl. at Exs. 2 at pp. 4-5 and 3 at pp. 3-4.)

Plaintiff's alleged intangible harms do not satisfy the "concreteness" requirement set forth by the U.S. Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  Indeed, relying on *Spokeo*, the Second Circuit held that for an intangible harm to be sufficiently concrete to confer Article III standing, (i) the statutory provision that was allegedly violated must have been designed to "protect a plaintiff's concrete interests" as to the harm in question and (ii) the violation must present a "'risk of real harm' to that concrete interest."  *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549).

Congress enacted Sections 1681c(a)(5) and 1681e(b) of the FCRA in order to prevent potential employers from denying applicants jobs based on inaccurate information and, for jobs paying less than $75,000, certain outdated information. Because Plaintiff does not allege that she suffered the harm identified by Congress, i.e., that she was denied a job due to Sterling's allegedly illegal reporting of her infraction, or any other "real-world harm," she lacks Article III standing to sue in federal court.  Therefore, this Court should dismiss her Complaint.

## II.   BACKGROUND

### A.   Plaintiff Pled Guilty to a False and Fictitious Vehicle Registration Infraction in 2001.

As Plaintiff admits, she pled guilty to having a "false or fictitious" vehicle registration in Wayne County, Indiana in 2001.  (Compl., ¶ 20.)  As a result, she was fined.  (*Id.*)  Plaintiff alleges that under Indiana law this offense was classified as an

"infraction."  (*Id.*, ¶ 21.)  She further alleges an Indiana appellate court ruled that all infractions in Indiana, including traffic offenses and violations of municipal ordinances, are considered non-criminal offenses and treated as civil matters.  (*Id.*)

**B.   Plaintiff Applied for Three Jobs in 2016 and 2017, and Sterling Issued Each Potential Employer a Background Check.**

Plaintiff alleges that she applied for three jobs in 2016 and 2017.  On or around November 8, 2016, Plaintiff applied for a job with PLS Financial Services, Inc. ("PLS").  (*Id.*, ¶ 22.)   On or around October 24, 2017, Plaintiff applied for a job with Integrity Staffing Solutions ("Integrity").  (*Id.*, ¶ 23.)  On or around November 1, 2017, Plaintiff applied for a job with Davidson Hotels and Resorts ("Davidson"). (*Id.*, ¶ 24.)  Plaintiff does not allege whether or not she got any of these jobs.

In connection with these job applications, PLS, Integrity, and Davidson each allegedly procured a background report about Plaintiff from Sterling.  (*Id.*, ¶¶ 22-24 and Exs. 1-3.)  All three reports (attached to the Complaint) included Plaintiff's infraction for a false or fictitious vehicle registration.  (*Id.*, ¶ 25 and Exs. 1 at p. 5, 2 at p. 5, 3 at p. 4.)  Each report included the following details about the infraction:

```
Case Number: 89D03-0105-IF 3697
    Verified By: Last Name,First Name,DOB
    Last Name: WASHINGTON
    First Name: ADRINE
    Middle Name: B
        DOB:        /XX
Case Comments: Case Type: Conviction
               Case Level: Infraction
               Case Status: Closed Case
               Filed Date: 05/09/2001
               Disposition Date: 06/11/2001
               Sentences:
               Type: Fine
               Suspended: No
               ─────────────
               Additional Info: Address : ███████████
               Charges
                   Violation Date: 5/9/2001
                        Type: Infraction
               Original Charge: False Or Fictitious Registration
                   Disposition: PLEADS GUILTY
```

(*Id.* at Ex. 2 at p. 5.)  Plaintiff admits that she pled guilty to this infraction, (*id.*, ¶ 20), and does not challenge any of the details Sterling reported as inaccurate.  (*Id.*, ¶ 27.)  The <u>only</u> inaccuracy Plaintiff alleges is that this allegedly non-criminal infraction was listed under the heading – albeit on an entirely different page of each of the reports – "County Criminal Record."  (*Id.*, ¶ 27.)

Two of the three background reports about Plaintiff also contained an additional criminal conviction that Plaintiff has redacted from the copies filed with the Court.  (*See* Compl. at Exs. 2 at pp. 4-5 and 3 at pp. 3-4.)  Plaintiff takes no issue with Sterling's reporting of this conviction to her three prospective employers.

## C.    Plaintiff Asserts Claims Against Sterling Under Sections 1681c(a)(5) and 1681e(b) of the FCRA.

Plaintiff alleges that Sterling violated Section 1681c(a)(5) of the FCRA because it reported a non-criminal record that was more than seven (7) years old.  (*Id.*, ¶ 26.)  Section 1681c(a)(5) provides that CRAs may not include in consumer reports any "adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years."  15 U.S.C. § 1681c(a)(5).  Plaintiff alleges Sterling could not report infractions older than seven (7) years because, according to an Indiana state appellate court ruling, they were not criminal, but civil, records under Indiana law.  (Compl., ¶ 26.)

Plaintiff's claim that Sterling's reporting of the Indiana infraction violated Section 1681e(b) is not premised on this accurate reporting of the record, but because it was reported under the (small-type) heading "County Criminal Record" (*Id.*, ¶ 27.)  Section 1681e(b) does not prohibit CRAs, such as Sterling, from

4

reporting inaccurate information about consumers.  Rather, it requires CRAs that prepare "consumer reports," such as the background checks Sterling prepared about Plaintiff, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Plaintiff alleges that Sterling did not have such procedures in place to prevent the allegedly inaccurate reporting of non-criminal infractions under the heading "Criminal Record."  (Compl., ¶¶ 45-48.)

By her Complaint, Plaintiff seeks to recover statutory damages of $100 to $1,000 per class member as well as her attorney's fees and costs incurred in bringing this suit.  (*Id.*, ¶ 68.)  Although Plaintiff requests an award of actual damages, (*id.* at ¶ 68), she does not allege that she suffered any such damages (such as lost wages due to a job denial) as a result of Sterling's allegedly illegal reporting or allege any facts in support of her claim for such damages.

### III.    LEGAL STANDARDS

**A.    The Supreme Court in *Spokeo* Held That a Mere Violation of the FCRA That Does Not Result in a Concrete Harm Does Not Establish a Plaintiff's Article III Standing to Assert FCRA Claims.**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quotations and citations omitted).  To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff bears the burden of establishing:  "(1) 'injury in fact'; (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a

likelihood 'that the injury will be redressed by a favorable decision.'" *Strubel*, 842 F.3d at 187-88 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To establish an injury-in-fact, "a plaintiff must show the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' *Id.* (quoting *Lujan*, 504 U.S. at 560).

In a 2016 decision, the U.S. Supreme Court addressed the "injury-in-fact" (i.e., harm) required to establish Article III standing to assert an FCRA claim. *Spokeo*, 136 S. Ct. at 1547.  In overturning the lower appellate court, the Supreme Court held that the mere allegation of an FCRA violation, standing alone, "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement." *Id.* at 1549.  Rather, "Article III standing requires a *concrete* injury even in the context of a statutory violation." *Id.* (emphasis added).  Accordingly, merely alleging a violation of one of the FCRA's provisions is no longer sufficient to establish Article III standing, as it had been in some federal circuit courts before *Spokeo*.  *See Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 929-30 (8th Cir. Sept. 8, 2016) (*Spokeo* abrogated case law that the "violation of a statutory right constitutes an injury-in-fact that is sufficient *by itself* to establish standing under Article III.") (emphasis added); *Crupar-Weinmann v. Paris Baguette Am., Inc.*, Nos. 14-3709-cv, 15-464-cv, 2016 WL 3553448, at *1 (2d Cir. June 30, 2016) (remanding based on "the change *Spokeo* effected in the standing doctrine" so plaintiffs could "replead their claims to comport with the pleading standards set forth in *Spokeo*").

The Supreme Court also clarified the requirements for a "concrete" injury-in-fact. The Supreme Court made clear that intangible injuries (such as that alleged by Plaintiff here) may be sufficiently concrete in some cases. *Spokeo*, 136 S. Ct. at 1549. In determining whether an intangible harm is sufficiently concrete, the Supreme Court explained that "both history and the judgment of Congress play important roles." *Id.* *First*, since the doctrine of standing is "grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* *Second*, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.*

While it may be "instructive and important," the Supreme Court made clear that the judgment of Congress nevertheless has its limits, i.e., it does not automatically confer Article III standing. *Spokeo*, 136 S. Ct. at 1547-49; *see also Hagy v. Demers & Adams*, 882 F.3d 616, 622-23 (6th Cir. 2018) ("Congressional leeway cannot mean judicial abdication."). The Supreme Court held that although Congress can "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law," it "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547-49.

As a result, even where it is designed to protect a plaintiff's concrete interest, "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. Notably, in addressing the standing analysis for claims, like Plaintiff's

here, under Section 1681e(b), the Supreme Court explained that "not all inaccuracies cause harm or present any material risk of harm." *Id.* For example, "It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* The Second Circuit later adopted this ruling, and re-affirmed its logic, ruling that such misinformation is "too trivial to 'cause harm or present any material risk of harm.'" *Strubel*, 842 F.3d at 190 (quoting *Spokeo*, 136 S.Ct. at 1550).

**B.** **The Second Circuit Established a Two-Part Test for Determining Whether an Alleged Intangible Injury Is Sufficiently "Concrete" To Establish Article III Standing.**

Based on the guidance provided by the Supreme Court in *Spokeo*, the Second Circuit established a two-part test for determining whether an intangible harm allegedly caused by the statutory violation is sufficiently "concrete." That test asks (1) "'whether Congress conferred the procedural right to protect a plaintiff's concrete interests' as to the harm in question" and (2) whether "the procedural violation presents a 'risk of real harm' to that concrete interest." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Strubel*, 842 F.3d at 190). Notably, the Second Circuit advised that "even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate a concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." *Strubel*, 842 F.3d at 190.

The Second Circuit test is consistent with that of other federal circuit courts. On remand from the Supreme Court in *Spokeo*, the Ninth Circuit adopted virtually the same test enunciated in *Strubel* because it determined that this test "best

elucidates the concreteness standards articulated by the Supreme Court." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017); *see also Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 345-46 (4th Cir. 2017) (in examining whether violation of a statutory disclosure requirement constitutes an injury-in-fact, court must consider whether violation resulted in "they type of harm Congress *sought to prevent* by requiring the disclosure") (emphasis in original).

**C.     To Survive A Rule 12(b)(1) Motion To Dismiss, Plaintiff Must Plausibly Allege Facts Demonstrating That She Suffered A Concrete Injury-In-Fact.**

A Rule 12(b)(1) motion to dismiss challenges the Court's subject-matter jurisdiction.  The burden for establishing the Court's subject-matter jurisdiction rests with Plaintiff since she is the party asserting the claims in federal court.  *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  In a class-action lawsuit, the named plaintiff must establish standing to seek relief on behalf of the class.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006).  Further, "a plaintiff must demonstrate standing for each claim and form of relief sought."  *Baur v. Veneman,* 352 F.3d 625, 642 n. 15 (2d Cir. 2003).

Sterling here challenges the legal sufficiency of the allegations of the complaint.  On such a Rule 12(b)(1) facial attack (as opposed to a factual attack), the Court evaluates whether the plaintiff has made a sufficient allegation of harm "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  At the pleading stage, "the plaintiff must 'clearly … allege facts demonstrating' each

element" of Article III standing to survive a Rule 12(b)(1) motion to dismiss. *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

In deciding a Rule 12(b)(1) motion to dismiss, the Court employs a legal standard similar to that governing the Court's review of a motion to dismiss pursuant to Rule 12(b)(6), i.e., the *Iqbal/Twombly* plausibility standard. *See Amidax Trading Group*, 671 F.3d at 145. Accordingly, the Court must take only the well-pleaded *facts* as true, i.e., "[o]nly if such factual support exists, can [a plaintiff] nudge its alleged injury from one that is conceivable to one that is plausible." *Id.* at 146 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)). Most relevant here, the Court need not "credit a complaint's conclusory statements without reference to its factual context." *Id.* (citing *Iqbal*, 129 S. Ct. at 1954). Further, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Id.* at 147 (citation omitted). Because she has alleged no facts to support her standing (i.e., only conclusory allegations), Plaintiff fails to meet this standard and, therefore, this Court should dismiss her claims pursuant to Rule 12(b)(1).

## IV.   ARGUMENT

**A.   Plaintiff's Alleged Intangible Harms Are Not Sufficiently Concrete to Establish Standing Because They Are Not the Harms Congress Sought to Protect By Enacting Sections 1681c(a)(5) and 1681e(b) of the FCRA.**

Even if Plaintiff properly alleged such harms (and she has not, *see infra* at pp. 16-20), Plaintiff cannot satisfy the first prong of the Second Circuit's two-part test for Article III standing because Congress did not enact Sections 1681c(a)(5) and

1681e(b) to protect her from the intangible harms she allegedly suffered.  First, she alleges that Sterling's "reporting invaded Plaintiff's privacy rights in not having obsolete, old, and irrelevant information reported on her." (Compl., ¶ 28.)  Second, she alleges Sterling's reporting "presented her to her prospective employers as having a more serious offense record than she had in reality." (*Id.*)  However, those were not the harms Congress sought to prevent when enacting Sections 1681c(a)(5) and 1681e(b).  Rather, Congress enacted these provisions to prevent employers from denying jobs based on inaccurate information and, for jobs paying less than $75,000, based on certain dated information.

In order for Plaintiff's alleged harms resulting from Sterling's alleged violations of Sections 1681c(a)(5) and 1681e(b) to be sufficiently concrete, Congress must have enacted these provisions "to protect a plaintiff's concrete interests' as to the harm in question." *Katz*, 872 F.3d at 119 (quoting *Strubel*, 842 F.3d at 190).  To make this determination, the Court must examine what specific harm Congress sought to remedy when enacting the specific statutory provision allegedly violated, not other provisions in the statute.  *See Witt v. Corelogic Saferent, LLC*, No. 3:15-CV-386, 2016 WL 4424955, at *7 (E.D. Va. Aug. 18, 2016) (analyzing legislative history of Section 1681k of the FCRA to identify harms identified and elevated by Congress that can provide Article III standing).

Indeed, "[t]he FCRA is a complicated statute" with over thirty (30) separate sections addressing different concerns, i.e., harms. *Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404, 409 (S.D.N.Y. 2016); *see also* 15 U.S.C. §§ 1681 *et seq.*  When

separate provisions remedy different problems, courts must construe them narrowly, consistent with the specific goal of the provision, not expansively to goals addressed by other provisions of the statute.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 588 (2010) ("[T]he existence of a separate provision that, by its plain terms, is more obviously tailored to the concern at issue … weighs against stretching the language of the [provision] to accommodate [Defendant's] expansive reading."); *see also Jones*, 317 F.R.D. at 409-10 (examining different purposes of Sections 1681e(b) and 1681k(a) of the FCRA (citing *Jerman*, 559 U.S. at 588)).

Such pin-point analysis of legislative intent is exactly what the Supreme Court did in *Spokeo*.  *See* 136 S. Ct. at 1549-50 (by enacting Section 1681e(b), "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk").  Other courts have followed this analysis.  *See Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 81 (2d Cir. 2017) (examining harm Congress sought to prevent when enacting 15 U.S.C. § 1681c(g) and subsequent amendment to that provision); *Strubel*, 842 at 190-94 (examining each statutory provision allegedly violated separately to make concreteness determination); *Bellino v. JPMorgan Chase Bank, N.A.*, 209 F. Supp. 3d 601,606-12 (S.D.N.Y. 2016) (considering legislative history of NY statute to identify harms identified and elevated by the legislature that could provide Article III standing and collecting cases conducting same analysis).

Similarly, here, this Court must examine the language and legislative history of Sections 1681c(a)(5) and 1681e(b) to determine the particular harm that the provisions are intended to avoid.  Such an examination makes clear that the harms Congress sought to avoid was the loss of job and credit opportunities due to obsolete and inaccurate information.

1.  **Congress enacted Section 1681c(a) to prevent the denial of jobs and credit based on outdated information.**

When first enacting the initial provisions of the FCRA, Congress identified a number of problems (i.e., harms) that it sought to prevent.  *See* 115 Cong. Rec. S. 1163-69, S. 1163 (attached as Exhibit A).  It then enacted separate, specific provisions to address each of those problems.  *See id.*  One problem Congress identified was the use of "irrelevant information" to make employment and credit eligibility decisions.  *Id.* at S. 1165.  According to Congress, "One of the most common irrelevancies" was the reporting of obsolete information, e.g., "information on minor offenses committed many years ago."  *Id.*  Congress identified several examples of consumers who had lost employment or credit opportunities because of the reporting of such obsolete information.  *Id.*  To prevent the use of such information, Congress proposed that bureaus be required to "destroy information once it has become obsolete."  *Id.* at S. 1167.

Later amendments to Section 1681c confirm that the harm Congress sought to prevent by the provision is the *use* of adverse, obsolete information for employment and credit eligibility decisions, and not merely the reporting of such information.  For example, in 1998, almost 30 years after first enacting the FCRA,

13

Congress amended Section 1681c to allow the reporting of convictions over seven (7) years old.  Congress explained that this amendment ensured that "employers have access to critical information in order to make informed hiring decisions."  144 Cong. Record H. 10218-02, at 10219 (daily ed. Oct. 8, 1998) (attached as Exhibit B). Congress explained that even if it was obsolete, "[s]uch information is particularly crucial in the hiring process" of certain employers.  *Id.*

Nothing in the statute or its legislative history suggests that Section 1681c(a) was intended or understood to address an invasion-of-privacy harm, let alone elevate such purposed harm to a level that satisfies Article III.  In fact, a separate problem identified by the FCRA's sponsor was the failure of bureaus to keep information confidential, i.e., an invasion of privacy.  115 Cong. Rec. S. 1163-69, S. 1163.  To remedy this problem, Congress limited the circumstances under which bureaus could furnish consumer reports, i.e., only for specific transactions or with the written consent of the subject of the report.  *Id.* at 1167.[2]  Similarly, when Congress amended Section 1681c(a) in 1998, it made no mention of protecting privacy.  *See generally* 144 Cong. Rec. H. 10218-02 (daily ed. Oct. 9, 1998).

Indeed, Section 1681c does *not* impose a flat prohibition on the reporting of all obsolete information.  Instead, it specifically allowed the reporting, and corresponding use, of certain obsolete information in certain circumstances.  For example, there is no prohibition on reporting non-adverse, obsolete information. *See* 15 U.S.C. § 1681c(a).  (This is consistent with the purpose of the provision, as

---

[2] Notably, because her reports were allegedly used for employment purposes, her potential employers could only receive her reports from Sterling with her consent.  *See* 15 U.S.C. § 1681b(b)(2).

non-adverse information is unlikely to be used to make an adverse credit or

employment decision.)  Further, Congress specifically allowed the reporting of

adverse, obsolete information for higher-value credit and insurance transactions, as

well as for jobs paying $75,000 or more.  *See* 15 U.S.C. § 1681c(b).

### 2. Congress similarly enacted Section 1681e(b) to prevent the denial of jobs and credit based on inaccurate information.

Another "use" problem identified by Congress when it originally enacted the

FCRA was that prospective lenders and employers could rely on inaccurate

information in "consumer reports" to deny consumers employment or credit.  115

Cong. Rec. S. 1163-69, at 1163 (daily ed. Jan. 31, 1969).  Notably, despite the

concern for adverse decisions based on inaccurate information, Section 1681e(b)

does *not* prohibit the reporting of inaccurate information.  Indeed, the legislative

sponsor of the FCRA recognized that "it would be unrealistic to expect credit

reporting agencies to be absolutely accurate on every single case." *Id.* at S. 1664.

Rather than demanding accuracy in all reporting, Section 1681e(b) expressly

requires only "reasonable procedures" to curb the harm caused by the use of

inaccurate information, i.e., the denial of a job, credit, or insurance. 15 U.S.C. §

1681e(b); *see also* S. Rep. No. 91-517, 91st Cong., 1st Sess., at 1-2 (Nov. 5, 1969)

(attached as Exhibit C) (identifying purpose of FCRA as "prevent[ing] consumers

from being unjustly damaged because of inaccurate or arbitrary information in a

credit report" and listing being "rejected for credit, insurance or employment" as

examples).  Consistent with this explanation, it was noted during Congressional

hearings that "mistakes are harmful to consumers in their efforts to obtain credit,

insurance or employment."  116 Cong. Rec. H. 10048-57, at 10054 (daily ed. Oct. 13, 1970) (attached as Exhibit D).

As with Section 1681c(a), nothing in its text or legislative history suggests that Section 1681e(b) was enacted to prevent an "invasion of privacy."  This is not surprising, as the statute does not prohibit the reporting of information – not even inaccurate information; it simply requires procedures to reduce the risk of inaccuracy.  Further, when enacting Section 1681e(b), Congress did not identify, as a harm it sought to prevent, users reviewing inaccurate information.  *See* 115 Cong. Rec. S. 1163-69, at 1163 ("[I]t is unrealistic to expect 100 percent accuracy.").  Rather, the legislative history makes clear that Section 1681e(b) was intended to prevent the denial of jobs and credit based on the *use* of that information.

**B.     Plaintiff Does Not Allege That She Was Denied A Job Due To Sterling's Allegedly Illegal Reporting – The Harm Congress Sought to Prevent In Enacting Sections 1681c(a) and 1681e(b).**

Plaintiff cannot satisfy the second prong of the Second Circuit's two-part test because she does not allege that she was denied a job based on the reporting by Sterling, which was the harm Congress identified when enacting Sections 1681c(a) and 1681e(b) of the FCRA.  As the Second Circuit explained, "[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate a concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest."  *Strubel*, 842 F.3d at 190; *see also Dreher*, 856 F.3d at 345-46 (no standing where violation did not result in "the type of harm Congress *sought to prevent* by requiring the disclosure") (emphasis in original).

16

The Second Circuit has twice affirmed dismissal of statutory claims that do not result in the type of harm Congress sought to prevent for lack of Article III standing.  In *Crupar-Weinmann*, the Second Circuit affirmed the dismissal of a consumer's claim against a retail store for including information on her credit card receipt.  861 F.3d at 81.  The Second Circuit explained that the purpose of that provision – 15 U.S.C. § 1681c(g) – was to protect consumers from "actual harm to their credit or identity" resulting from the display of the prohibited information.  *Id.* Because the plaintiff did not allege she suffered that harm, she was left with a "bare procedural violation" that caused no concrete harm and, therefore, lacked standing to sue.  *Id.*

In *Strubel*, the Second Circuit affirmed dismissal of a consumer's claims against a bank that provided him with a credit card.  The consumer alleged the bank violated the Truth in Lending Act, 15 U.S.C. 1601, *et seq.*, by failing to provide him with statutorily-mandated notices of his right to stop automatic payments of a disputed charge and the bank's duty to advise whether the billing error had been corrected.  842 F.3d at 191-93.  The Second Circuit ruled that there was no harm or material risk of harm to the interest the provisions were enacted to prevent – consumer's uninformed use of credit.  *Id.*  In contrast, the Second Circuit separately ruled that the bank's failure to provide the consumer with statutorily-mandated notices regarding "how the consumer's own actions can affect his rights with respect to credit transactions" did present a "'risk of real harm' to the consumer's concrete interest in the informed use of credit."  *Id.* at 190.

17

As discussed above, the plain language and legislative history make clear that the harm Congress sought to prevent when enacting Sections 1681c(a) and 1681e(b) was the denial of jobs based on inaccurate information, and in certain instances, based on certain obsolete information.  (*See supra* at 13-16.)  Here, however, Plaintiff does not allege that she was denied a job by PLS, Integrity, or Davidson based on the background checks Sterling provided, let alone that she was not hired due to the allegedly illegally reported infraction (rather than her other criminal conviction).  (Compl., ¶¶ 22-24.)[3]

Because she does not allege that she suffered the harm Congress sought to prevent in enacting Sections 1681c(a)(5) and 1681e(b), Plaintiff failed to allege that she suffered a "concrete" injury-in-fact sufficient to confer standing under the Second Circuit's two-part test.  *See Villaneueva v. Wells Fargo Bank, N.A.*, No. 13-CV-5429 (CS) (LMS), No. 14-CV-648 (CS) (LMS), 2016 WL 5220065, at *4 (S.D.N.Y. Sept. 14, 2016) (dismissing action for lack of standing where plaintiff alleged statutory violation "rather than alleging that they have suffered the concrete harm that these statutory provisions are intended to address").  Therefore, her claims should be dismissed.[4]

---

[3] Not only does she not allege that she was denied a job, Plaintiff also does not allege any material risk of future harm to her job prospects.  Nor could she plausibly make such allegations – consistent with Rule 11 – given the apparent lack of impact that her false and fictitious vehicle registration infraction had on her job applications to PLS, Integrity, and Davidson and given the other criminal conviction, which she concedes was properly reported.  Indeed, the Supreme Court requires that any alleged future harm be "imminent" and not merely "conjectural or hypothetical."  Imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending."  *Clapper*, 133 S. Ct. at 1147 (quotation and emphasis omitted).

[4] One court declined to dismiss alleged violations of Section 1681c(a) and 1681e(b) of the FCRA for lack of Article III standing.  *See Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510 (S.D.N.Y.

Further, even if the Court determined that Plaintiff's conclusory allegation that Sterling made her offense record look worse than it really was implicated her concrete interest, she has failed to plausibly allege that she suffered any "real harm" to that interest.  Plaintiff alleges that Sterling's accurate reporting of her guilty plea to a charge of "false or fictitious registration" presented her to her potential employers in a worse light because it was reported under the heading "County Criminal Record."  (Compl., ¶ 28.)  She does not allege that she lost any of her three (3) job opportunities due to the heading.  Indeed, conspicuously absent from her Complaint is any allegation regarding whether she received or was denied the jobs she applied for.

Also conspicuously omitted from her Complaint and redacted from the background reports appended to her Complaint are the details of another criminal offense on her Sterling report.  (*See, e.g.*, Compl. at Ex. 3 at p. 4 (redacted record above false or fictitious registration infraction.)  Plaintiff does not contend that Sterling improperly reported this criminal conviction or that it was inaccurate in anyway.  Accordingly, her conclusory allegation that Sterling's allegedly illegal reporting made her appear to have "a more serious offense record" than she really did is simply not plausible in light of this properly reported and accurate criminal conviction.  *See Amidax Trading Group*, 671 F.3d at 145 (courts need not "credit a

---

2017) (Engelmayer, J.).  However, this decision did not apply the Second Circuit's two-part test set forth in *Strubel*, *Katz*, and *Crupar-Weinmann* used to determine whether intangible injuries are sufficiently concrete to confer Article III standing.

complaint's conclusory statements without reference to its factual context" (quoting *Iqbal*, 129 S. Ct. at 1954)).[5]

## C.   Plaintiff Alleges Only Bare Statutory Violations Without Any Resulting "Real-World Harm."

Plaintiff's claims should be dismissed for lack of Article III standing because she alleges only bare statutory violations without any allegations of "real-world harm" that she suffered as a result.  As the Supreme Court made clear in *Spokeo*, such "a bare procedural violation, divorced from any concrete harm," fails to "satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at 1549 (citations omitted).

Instead, to establish the requisite injury-in-fact, a plaintiff must establish that the statutory violation "caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'"  *Robins*, 867 F.3d at 1112 (quoting *Spokeo*, 136 S. Ct. at 1548-49); *accord Strubel*, 842 F.3d. at 190 (requiring "risk of 'real harm'").  In other words,

---

[5] It is also worth noting that Plaintiff's bare assertion that she suffered an invasion of privacy does not state a common-law privacy claim.  For example, she does not allege that she did not consent to Sterling providing a background check to her prospective employers in connection with her job applications.  *See* Restatement (Second) of Torts § 892A (no invasion of privacy where recipient of information obtained consent).  The FCRA specifically requires her prospective employers to obtain her consent before Sterling provided them with her background checks.  *See* 15 U.S.C. § 1681b(b)(2).

Nor does she allege any widespread public dissemination of her private information or an intrusion that is "highly offensive to a reasonable person," which is required for a privacy claim at common law.  *See* Restatement (Second) of Torts §§ 652A, cmt. C.A.2.  To the contrary, Plaintiff's criminal records are public records.  *See* Restatement (Second) of Torts §§ 652B, cmt. c ("[T]here is no liability for the examination of a public record concerning the plaintiff."), 652D cmt. b ("There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.").  Nothing in the FCRA purports to confer a blanket privacy protection to these public records.  To the contrary, they can be used in many credit and employment decisions.  Congress simply limited their use in denying applicants jobs paying less than $75,000.

"even when a statute has allegedly been violated, Article III requires such a violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Robins*, 867 F.3d at 1112; *see also Dreher*, 856 F.3d at 345-46 (affirming dismissal of FCRA claim for lack of standing because the allegedly insufficient disclosure form did not create a "real world harm" that had an "adverse effect"); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 729 (7th Cir. 2016) ("the violation of a statute, completely divorced from any potential real world harm" is insufficient to satisfy Article III's injury-in-fact requirement); *Bellino*, 209 F. Supp. at 604-05 (S.D.N.Y.) ("Concreteness … refers to the realness of the injury.").

The obvious "real-world harm" that Plaintiff would have suffered as a result of Sterling making her look bad to prospective employers is the loss of a job and resulting wages.  However, Plaintiff does not allege that PLS, Integrity, or Davidson denied her a job due based on Sterling's reporting of her infraction.  Nor does Plaintiff does allege that she suffered any other "real-world harm."   Accordingly, Plaintiff failed to allege that she suffered a "concrete" injury-in-fact sufficient to confer standing.

## V.    CONCLUSION

Plaintiff's alleged intangible harms are not sufficiently concrete to establish her Article III standing to sue in this Court because they are not the harms Congress sought to protect by enacting Sections 1681c(a)(5) and 1681e(b) of the FCRA.  That harm was the loss of a job due to the reporting of inaccurate and certain obsolete information.  However, Plaintiff does not allege that she suffered that harm, or any other "real-world harm."   As a result, she has alleged only a bare

21

procedural violation of the FCRA, divorced from any concrete harm.  Therefore, the Court should grant Sterling's motion and dismiss the Complaint pursuant to Rule 12(b)(1).

Dated:  July 17, 2018                    Respectfully submitted,

                                          _/s/ Bruce R. Van Baren_____

                                         Michael O'Neil (*Pro Hac Vice*)
                                         Albert E. Hartmann (*Pro Hac Vice*)
                                         Bruce R. Van Baren (*Pro Hac Vice*)
                                         REED SMITH LLP
                                         10 South Wacker Drive, 40th Floor
                                         Chicago, Illinois 60606
                                         T: (312) 207-1000
                                         F: (312) 207-6400
                                         michael.oneil@reedsmith.com
                                         ahartmann@reedsmith.com
                                         bvanbaren@reedsmith.com

                                         -and-

                                         Zalika T. Pierre
                                         REED SMITH LLP
                                         599 Lexington Avenue, 22nd Floor
                                         New York, NY 10022
                                         T: (212) 521-5400
                                         F: (212) 521-5450
                                         zpierre@reedsmith.com

                                         *Counsel for Defendant*
                                         *Sterling Infosystems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record in this case.

*/s/ Bruce R. Van Baren*
Bruce R. Van Baren